11th Court of Appeals








11th
Court of Appeals

Eastland,
Texas

Opinion

 

Buck Edward
Marshall, Jr.

Appellant

Vs.                   No.
11-03-00140-CR -- Appeal from Collin County

State of Texas

Appellee

 

The
jury found Buck Edward Marshall, Jr. guilty of two counts of sexual assault of
a child.  The indictment charged in count one that one assault occurred on or
about March 24, 2002, and in count two that an earlier assault occurred on or
about December 25, 2001.  Appellant was sentenced to 37 years confinement in
the Texas Department of Criminal Justice, Institutional Division.  In a single
point of error, appellant argues that the evidence was legally and factually
insufficient to support his conviction.  

The
15-year-old victim related how she became involved with appellant, a
32-year-old married man, and how they began and continued to have sexual
relations.  Other witnesses testified that appellant admitted that he had Aslept@ with the victim and that
he knew it was wrong.  We affirm.

Standard
of Review








In
order to determine if the evidence is legally sufficient, we must review all of
the evidence in the light most favorable to the verdict and determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979); Jackson
v. State, 17 S.W.3d 664 (Tex.Cr.App.2000).  In order to determine if the
evidence is factually sufficient, we must review all of the evidence in a
neutral light and determine whether the evidence supporting guilt is so weak
that the verdict was clearly wrong and manifestly unjust or whether the
evidence contrary to the verdict is so strong that the
beyond-a-reasonable-doubt burden of proof could not have been met.  Zuniga
v. State, No. 539-02,  2004 WL 840786 (Tex.Cr.App. April 21, 2004); Ross
v. State, 133 S.W.3d 618 ( Tex.Cr.App.2004); Vasquez v. State, 67 S.W.3d
229, 236 (Tex.Cr.App.2002); Cain v. State, 958 S.W.2d 404
(Tex.Cr.App.1997); Clewis v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). 
The jury, as the trier of fact, was the sole judge of the credibility of the
witnesses and of the weight to be given to their testimony.  TEX. CODE CRIM.
PRO. ANN. arts. 38.04 & 36.13 (Vernon 1979 & 1981); Johnson v. State,
23 S.W.3d 1 (Tex.Cr.App.2000).  We review the fact finder=s weighing of the evidence
and cannot substitute our judgment for that of the fact finder.  Cain v.
State, supra; Clewis v. State, supra.  Due deference must be given to the
fact finder=s
determination, particularly concerning the weight and credibility of the
evidence.  Johnson v. State, supra; Jones v.State, 944 S.W.2d 642
(Tex.Cr.App.1996), cert. den=d,
522 U.S. 832 (1997).

                                                                    The
Evidence

The
State presented testimony to prove the elements of sexual assault of a child: 
that appellant intentionally or knowingly caused the penetration of the sexual
organ of the victim, a child then younger than 17 years of age and not the
spouse of appellant, by means of his sexual organ.  See TEX. PEN. CODE
ANN. '22.011(a)(2)(A)(Vernon
Supp. 2004-2005).  The State was not required to prove that appellant knew the
victim was younger than the age of 17.  Ignorance of the victim=s age is not a defense.  Vasquez
v. State, 622 S.W.2d 864, 865-66 (Tex.Cr.App.1981).         

The
victim testified that she and her mother moved from Kansas City to live with
her older sister, Kai Hawkins, in Plano on December 2, 2001.  The victim was 15
years old at the time.  Kai lived with her three children.  Kai had also let a
long-time friend, Lynette Marshall, and her 32-year-old husband (appellant)
move in with her in October until they could get resettled. 

Kai
helped Lynette get a job with the Medical Center of Plano where she worked;
both Kai and Lynette worked the night shift.  The victim=s mother left the house each morning at 5:30
a.m. to go to her job.  Appellant did not have a job.  According to the victim,
appellant would wake her up each morning by jumping on her back, and she and
appellant would play games.  The victim testified that she and appellant got
along well and that appellant asked her to have sex with him after she had been
living in Plano about two weeks.  Although she told him no, the victim said
that appellant then put on some rhythm and blues music A[t]rying to get me in the mood.@  The victim said that she
didn=t do anything at
the time, just went back to sleep. 








The
victim testified that she and appellant first had sexual intercourse on
Christmas Eve of 2001.  She stated that she and Kai=s children were sitting on the floor in
appellant=s bedroom,
watching television.  She fell asleep.  The victim said that appellant awakened
her by pulling her jeans down and then pulling her underwear down.  She and
appellant were alone.  According to the victim, appellant  placed his finger in
her vagina for two or three minutes and then went into the bathroom to put on a
condom.  The victim testified that they had sexual intercourse on the floor,
that he put A[h]is
penis in [her] vagina,@
that she enjoyed appellant Amessing@ with her, and that she
liked appellant.  Later that night, appellant told her:  AWe=d make a pretty baby.@  

After
celebrating Christmas, the victim, Kai, Lynette, and Toya drove to Arkansas in
two cars to visit various family members.  The victim rode with Lynette, but
she did not tell Lynette that she had had sex with appellant even though she
felt guilty about it.  She said that she did not tell Lynette because she did
not want to hurt Lynette=s
feelings.  The victim did say that, while in Pine Bluff, Arkansas, she told Kai
and Toya that she had had sex with appellant. 

The
victim said Kai was angry at appellant but not at her.  The victim asked Kai to
not tell anyone, not even the police, because the victim did not want to hurt
Lynette=s feelings. 
In her testimony, Kai said that she did not call the police.  Instead, she
later confronted appellant, and A[h]e
assured me that it wouldn=t
happen again.@  When
Kai asked appellant why he had Aviolate[d]@ her sister, appellant
replied:  AI don=t know.@  Kai then asked him if he
felt bad about it, and appellant replied, AWell,
yeah, I feel bad about it.@ 
Kai testified that appellant then gave her his word that he would not have sex
with the victim again.  Kai said that she trusted appellant because she thought
that he valued his marriage with her friend.  The victim confirmed Kai=s confrontation with
appellant.  Later, after the confrontation, appellant told the victim, AYou have a big mouth.@ 

Despite
appellant=s promise to
Kai, the victim testified that she and appellant continued to have sexual
intercourse.  She testified that appellant would approach her in the living
room between 2:00 and 4:00 a.m. while Kai and Lynette were at work and her
mother was asleep in her room.  The victim described the sexual encounters and
stated that she had sex with appellant ten times.  The victim said that the
last time that she had sexual intercourse with appellant was AMarch 20-something.@ 








On
March 28, 2002, Kai and the victim=s
mother were with the victim for her appearance in truancy court.  While at the
truancy court, the victim told them that she had continued to have sex with
appellant.  The victim described Kai as being upset and being determined to
call the police.  The victim recalled that Kai called the police when they
returned home that day.  Although the victim said that she understood why Kai
called the police, she was Aa
little bit@ angry with
Kai.  The victim believed that Kai should have just kicked appellant out of the
house. 

Stacy
Jones, who lived next door to Kai, testified that he was a friend of appellant=s and that he used to Ahang out@ with appellant.  Jones
stated that appellant told him that appellant had Aslept@
with the victim. 

Plano
Police Officer Michael Weaver was dispatched to Kai=s house on March 31, 2002.  The victim told
him about her sexual relations with appellant.  Officer Weaver testified that,
according to the victim, after the victim told her sister about the first
sexual encounter, the victim next had sex with appellant on January 4 and the
last time on March 27.  Officer Weaver said that he noted no Ared flags@ signaling false
allegations by the victim, Kai, or the victim=s
mother.

Plano
Detective Luke Grant, a specialist in investigating sex crimes, subsequently
interviewed the victim, Kai, the victim=s
mother, Jones, and Chris Dabney, a friend of the victim.  Detective Grant also
testified that he did not see any indication that the victim=s statements were
inconsistent or that the allegations were false.

                                                  Appellant=s Argument

Appellant=s argument is primarily an
attempt to undermine the credibility of the victim.  He emphasizes that the
only evidence of the sexual offenses was the victim=s testimony and that the victim had said that
she had not wanted to file the charges.  In sexual assault cases, the testimony
of a child victim is sufficient to support a conviction.  TEX. CODE CRIM. PRO.
ANN. art. 38.07(a) (Vernon Pamph. Supp. 2004-2005); Empty v. State, 972
S.W.2d 194, 196 (Tex.App. - Dallas 1998, no pet=n);
Ruiz v. State, 891 S.W.2d 302, 304 (Tex.App. - San Antonio 1994, pet=n ref=d).  It appears  that the
victim did not want to file charges against appellant.  Her sister, Kai,
described the victim as being infatuated with appellant and said that the
victim did not see her sexual relations with appellant as being Aaltogether wrong.@  The important point,
however, is that the victim gave clear and detailed testimony about her sexual
relations with appellant from the first encounter on Christmas Eve to the final
one on AMarch
20-something.@    








 Appellant
argues that there were inconsistencies concerning the victim=s two Aoutcry@ statements to Kai.  He
points out that the victim testified that she made the first outcry several
days after the Christmas Eve incident while she and Kai were staying in a motel
in Arkansas, yet the victim told Officer Weaver that she made the outcry on
December 26, 2001.  Appellant then points out that the second outcry was made
on March 28 at the truancy court.  He emphasizes that the victim testified that
the last sexual encounter took place on AMarch
20-something,@ yet the
victim told Officer Weaver that it had taken place on March 27.  These are
minor inconsistencies.  The victim testified a year after she made the
statements to Officer Weaver.

Finally, appellant argues that the fact that no medical
examination was performed on the victim should be considered in determining the
factual sufficiency of the evidence.  However, Detective Grant testified that,
when a teenager voluntarily participates in sexual relations with someone she
likes and there is a delayed outcry, he would not expect an examining physician
to find semen, any sign of injury, or other evidence of the sexual act. 
Detective Grant did not begin his investigation until April 3 and he confirmed
that the victim consistently noted that appellant put on a condom before they had
sexual relations.  It was apparent that, based on Detective Grant=s experience, he did not
think that an examination would have provided physical evidence of the victim=s sexual relations with
appellant.  

Detective
Grant admitted that the victim was reluctant to talk to him about her sexual
relations with appellant.  He expressed his opinion that in cases like this B where an older male has
engaged in intercourse with an underage girl B
the victim was usually looking for a friend, physical contact, intimacy, or
attention.  Those desires make the victim an easier target for the older male. 


We
find that the evidence was legally and factually sufficient to support the jury=s verdict.  Appellant=s single point of error is
overruled.

                                                                This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

TERRY McCALL

JUSTICE

September 23,
2004

Do not publish. 
See TEX.R.APP.P. 47.2(b).

Panel consists of: Arnot, C.J.,
and

Wright, J., and  McCall, J.